# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A. CHARLES PERUTO, JR., | : | |
|                Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 18-4468 |
| | : | No. 18-4818 |
| ROC NATION, ET AL., | : | |
|                Defendants. | : | |

**McHugh, J.**                                                                                                                                          **June 12, 2019**

## MEMORANDUM

This case arises out of a "hot mic" situation where an attorney made candid and embarrassing comments about his client without realizing that he was still being recorded. The remarks were made at the end of a formal interview conducted as part of a documentary series. The recording of those remarks was subsequently posted and played by various media outlets on the internet. The attorney who gave the interview, A. Charles Peruto, Jr. brings these claims under the Pennsylvania and Federal Wiretap Acts, alleging that Defendants' continued recording without his knowledge and consent was illegal. Having reviewed the record, I conclude that the material facts of this case are undisputed, and that Plaintiff's wiretap actions cannot survive as a matter of law. Accordingly, I will grant summary judgment for Defendants.

## I.     Factual Background

This dispute stems from an interview Mr. Peruto gave in May 2018 for Defendants' documentary series entitled #FreeMeek. Defendants Roc Nation, Amazon Alternative, IPC Television, Josh Miller, Patrick Reardon, Eli Holzman, and Janet Kim are all involved in the production of the documentary series about rapper Robert Rihmeek Williams, better known as

Meek Mill. The documentary series intends to address, at least in part, Meek Mill's experience with the criminal justice system, including his interactions with Judge Genece Brinkley of the Philadelphia County Court of Common Pleas. Judge Brinkley has overseen Mill's criminal case for more than a decade, and her handling of the case has been the subject of some controversy since she re-imprisoned him for probation violations. In relation to that controversy, Judge Brinkley retained Mr. Peruto as her counsel.

Mr. Peruto sat for two interviews related to the documentary series. After the first interview on April 11, 2018, he had an off-the-record conversation with the interviewer and other representatives of Defendants. The second interview occurred on May 30, 2018 and is the source of the present dispute.

According to the recording, which all parties now agree is authentic,[1] the May 30 interview concluded with Peruto explaining why he believes Meek Mill does not represent an example of the problems in the criminal justice system. When Peruto finished, an off-camera speaker said, "Card." The interviewer responded, "Card? Do you have any questions? I'm done," to which the other speaker responded, "I'm done."[2] Decl. of Eli Holzman Ex. B, at 0:26:04-07, ECF No. 53-4. The interviewer then said, "Chuck, that was fantastic," and the two joked about the length of the interview. *Id.* at 0:26:07-17. As Peruto pushed his chair back from

---

[1] When I notified the parties of my intent to convert the Motions to Dismiss into Motions for Summary Judgment, I also ordered the parties to agree on an expert who could evaluate the authenticity of the recording because Plaintiff contended it had been edited. A team of two experts, Catalin Grigoras and Jeff Smith, has since confirmed that the recording is authentic. *See* Expert Report, ECF No. 69. At oral argument, no party disputed its authenticity.

[2] The transcript provided to the Court as an exhibit to the supplemental affidavits, Decl. Christopher Harper Ex. B; Decl. A. Charles Peruto, Jr. Ex. A, identifies these individuals as "speaker," "unknown speaker," and "speaker 1." It is not clear from the transcript that "speaker 1" is the same person as the initial person referred to as "speaker" and the second "unknown speaker," but after repeated independent review of the recording, the Court is confident it has accurately recounted the exchange in this Memorandum.

his desk, he thanked Defendants and gestured as if to remove a lavalier microphone,[3] and the interviewer said, "Great job, thank you, thanks so much." *Id.* at 0:26:17-19.

Peruto then said, "Let me tell you something," at which point the camera turned off. *Id.* at 0:26:20. The audio, however, continued recording as Peruto went on to say, "That was hard to do because defending this judge is now becoming—why doesn't she just grant this fucking thing?" *Id.* at 0:26:21-27. In the background, another speaker said something about "wrapping up," and Peruto continued talking. *Id.* at 0:26:27-34. Despite his assertions to the contrary in both the Second Amended Wiretap Complaint and the Second Amended Replevin Complaint, Mr. Peruto never instructed anyone to go "off the record," nor did anyone present state that they had stopped the audio recording. A conversation ensued—caught on the still-operating lavalier microphone—in which Peruto said critical things about his client and her handling of the Meek Mill case. Needless to say, Peruto did not intend for those statements to be shared widely, let alone become part of the #FreeMeek documentary series.

Unfortunately for Mr. Peruto, his comments were leaked to the press along with portions of the recording. Following unflattering media attention focused on those comments, Peruto commenced a series of lawsuits in state court, including a replevin claim, which Defendants removed to this Court.[4] Peruto also filed these claims under both the Federal and Pennsylvania Wiretap Acts.

Defendants filed Motions to Dismiss both actions and attached the recording to the Motion to Dismiss the Second Amended Wiretap Complaint. Plaintiff opposed the motions,

---

[3] The Court, in its repeated review of the video recording, has been unable to identify what apparently was a very discreet microphone worn under the shirt. But both parties agree that Peruto was wearing the lavalier microphone on his person. An active lavalier microphone was identified in the expert analysis of the audio files.

[4] I have addressed the replevin claim in a separate Memorandum.

3

arguing in part that the recording did not authentically portray the interaction, and that his request to go "off the record" had been edited out. Accordingly, I ordered the parties to identify an agreed upon expert to evaluate the authenticity of the recording and provided notice of my intent to convert the Motions to Dismiss into Motions for Summary Judgment. The parties were given the opportunity to supplement the record, and Plaintiff submitted supplemental affidavits, which I have deemed part of the record. After considering all the evidence and hearing oral argument, I conclude that no disputed questions of material fact remain and will grant summary judgment for the Defendants as to both wiretap claims.

**II.    Legal Standard**

A District Court may convert a motion to dismiss into a motion for summary judgment so long as the Court provides adequate notice of the conversion and reasonable opportunity to present material relevant to a summary judgment motion. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999). I provided notice of my intent to convert the motions in this case into motions for summary judgment, and Plaintiff has since supplemented the record with affidavits. After such a conversion, the motion is governed by the well-established standards of Fed. R. Civ. P. 56, as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**III.   Discussion**

*A. Pennsylvania Wiretap Act*

The Pennsylvania Wiretap Act prohibits intentional interception of any wire, oral, or electronic communication without the consent of all parties involved as well as any knowing disclosure of the contents of communications obtained in violation of the statute. 18 Pa. Cons.

Stat. §§ 5703, 5704(4).[5] The statutory definition of "oral communication" requires a justifiable "expectation that such communication is not subject to interception." *Id*. § 5702. On its face, this language would appear to support a claim. But the Pennsylvania Supreme Court has added a judicial gloss to the statute, increasing a plaintiff's burden, by reading "oral communications" to include only communications where "the speaker possessed a reasonable expectation of privacy in the conversation." *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998).

*Agnew* involved a claim brought against a police chief who rigged intercoms in his squad room so that he could eavesdrop on the conversations of his patrol officers, ostensibly for the purpose of identifying morale problems. *Id.* at 521. In denying recovery to the officers whose conversations were monitored, the Pennsylvania Supreme Court held that a justifiable expectation of non-interception necessarily required further proof of a reasonable expectation of privacy. *Id.* at 523. The Third Circuit has observed that *Agnew* represents an important development in the application of the Pennsylvania Wiretap Act, because it "squelched the distinction developing in some lower court cases between a reasonable expectation of non-interception and an expectation of privacy." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 257 (3d Cir. 2010). It is therefore not enough for Mr. Peruto to prove he did not expect to be recorded; he must show that he "exhibited an expectation of privacy" and that the "expectation is one that society is prepared to recognize as reasonable." *Agnew*, 717 A.2d at 523 (citation omitted).[6]

As to the first requirement, at best, Plaintiff might be able to establish a material issue of fact as to whether he expected to be recorded. Peruto and his expert make a colorable argument

---

[5] Statutes such as Pennsylvania's are commonly referred to as "two-party consent" statutes.

[6] In a concurring opinion, Justice Nigro advocated against this requirement, reasoning that "a speaker, under certain circumstances, may possess a reasonable expectation of non-interception even in the absence of a reasonable expectation of privacy." *Agnew*, 717 A.2d at 525 (Nigro, J. concurring). I find his reasoning persuasive but am bound by the majority view.

5

that, because the formal interview was concluded, the camera was turned away, he attempted to remove his lavalier microphone, and he attached significance to the film crew's use of the term "card," it was reasonable for Peruto to believe his statements were no longer being recorded. *See* Decl. Christopher Harper, ECF No. 75; Decl. A. Charles Peruto, Jr., ECF No. 75. Similarly, the content of the statements in question, his abrupt shift in tone, the dramatic difference from his on-camera remarks, and the sudden display of candor, all support an inference that he must have assumed his words were no longer public. But even those factors are offset by the fact that Plaintiff never sought to "go off the record," something that is no longer in dispute. And although Mr. Peruto attempted to remove the microphone inside his shirt, he did even not wait until he had fully removed the microphone or ensured it was off before beginning to disparage his client. He launched into the candid commentary described above only *two seconds* after reaching for that microphone. On these facts, I cannot conclude that Peruto exhibited an expectation of privacy.

Regardless, even if Mr. Peruto had demonstrated an expectation of privacy, in no respect did he have a *reasonable* expectation of privacy, a standard the Pennsylvania Supreme Court has interpreted narrowly. In *Agnew*, the Court found no reasonable expectation of privacy in a conversation because anyone else in the room could overhear the conversation, as could anyone outside the open squad room door, and the intercom system could have been open at any time, allowing conversations to be overheard. 717 A.2d at 524.; *accord Pa. State Police v. Grove*, 161 A.3d 877, 902 (Pa. 2017) (no reasonable expectation of privacy where conversations could be seen and overheard by bystanders); *see also Schultz v. Hughesville Borough*, 2011 WL 3273076, at *22 (M.D. Pa. July 29, 2011) (no reasonable expectation of privacy where conversation

occurred in parking lot in front of third party); *Commw. v. Henlen*, 564 A.2d 905, 906 (Pa. 1989) (no justifiable expectation of non-interception where third party attended interview of suspect).[7]

Mr. Peruto spoke freely in front of a room full of individuals, some of whom he did not know, in the presence of recording equipment. Although Peruto's office may have been more secure from eavesdroppers than the squad room in *Agnew*, the recording devices present had been active mere seconds before and were thus more likely than the intercom phones in *Agnew* to intercept the conversation. Peruto knew the recording devices had just been recording, yet he began disparaging his client before he even had time to fully remove his microphone. Given the controversial nature of the case he was discussing, Defendants' interest in getting a story, and the controversial nature of his remarks, Peruto had greater reason than the officers in *Agnew* to be concerned that his words might be intercepted, overheard, or otherwise disclosed.

At oral argument, Plaintiff's counsel emphasized that Mr. Peruto was experienced and comfortable in dealing with the press. Counsel argued that Peruto was therefore entitled to believe that, due to journalistic ethics, the filmmakers he was assisting would respect the confidentiality of his post-interview statements. To the contrary, Plaintiff's sophistication in such matters makes his expectation of privacy less reasonable, for several reasons.

First, Peruto knew he was disparaging his client to journalists working on a documentary series about a controversy in which public opinion has been hostile to his client. Any reasonable person could infer from that fact that Defendants would have an interest in

---

[7] Defendants rely heavily on *Commw. v. Alexander*, 708 A.2d 1251 (Pa. 1998), which I find of little relevance. Not only is it a plurality opinion, but it is a criminal case where the individual recording the conversation was working undercover with law enforcement, which had obtained a court order sanctioning interception without the knowledge or consent of the defendant.

disclosing his candid opinions about his client. For a journalist, to catch an interview subject in a fundamental contradiction is a prized coup—something Mr. Peruto would well understand.

Second, before the interview, Peruto—an experienced lawyer—signed a release, consenting to the use of his recorded conversations. *See* Decl. of Eli Holzman Ex. A, ECF No. 53-3. Whether or not the release applied to this specific recording,[8] it unambiguously put Peruto on notice as to Defendants' desire to use his conversations and statements in their documentary.

Finally, Mr. Peruto invokes the norms of journalism, yet he never took the obvious and elemental step of confirming that he was speaking off the record. Defendants are correct that Plaintiff's repeated assertions that the parties agreed to go off the record, though now disproven, reflect his understanding that such confirmation is essential. Any person of Mr. Peruto's experience would have to understand that, without first establishing that he wanted to speak off the record, he could not rely on the documentary team to keep his words private. In that regard, the relaxed and cordial tone of the proceedings apparent from the audio recording does not change the analysis. A lawyer examining a witness may be ingratiating or aggressive, but regardless they seek to advance their case. The same is true of journalists—they seek to advance their story. As a lawyer experienced in dealing with journalists, Mr. Peruto should have understood that, absent express direction to go off the record, he could not reasonably expect Defendants to put his privacy ahead of their story.

Had Mr. Peruto in fact directed Defendants to go off the record and received confirmation that they were off the record, as he alleged in various pleadings, the outcome here would be considerably less clear. But it has been definitively established by authenticating the

---

[8] Defendants argue a broad interpretation of the release as a complete bar to all Peruto's claims. I am not prepared to accept this argument for a variety of reasons and consider the release here and in the related replevin action only as it bears upon the context in which the parties were dealing.

recording that no such exchange occurred. It may be that a subjective expectation of privacy is what prompted Peruto to disparage his client in front of the media and their recording equipment, but such an expectation cannot possibly be considered objectively reasonable under the controlling standard.

And to the extent that Plaintiff invokes violations of journalistic ethics, courts have refused to consider any such breach as a basis for recovery. *See Patterson v. NBC Universal, Inc.*, 2011 WL 3163239, at *2 (W.D. Ky. July 26, 2011) ("The Court is not aware of any cognizable federal or state-law claim for violations of the 'Journalistic Code of Ethics.'"). Defendants' conduct in pressing their advantage following Mr. Peruto's lapse in judgment may not be praiseworthy, but that hardly renders their conduct illegal. Because I conclude as a matter of law that Mr. Peruto's expectation of privacy was not reasonable, his Pennsylvania Wiretap Act action cannot survive. Accordingly, I will grant summary judgment for Defendants.

B. *Federal Wiretap Act*

Plaintiff also raises a claim under the Federal Wiretap Act. Like the Pennsylvania statute, the Federal Act prohibits intentional interception of oral communications and knowing disclosure of their contents, *see* 18 U.S.C. § 2511(1). The Federal Act, however, generally precludes a cause of action so long as one party consented to the recording. *Id.* § 2511(2)(d). Plaintiff relies on an exception to that rule that applies where "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state." *Id*.

Specifically, Mr. Peruto argues that Defendants acted with the intent to commit the tort of false light invasion of privacy. Under Pennsylvania law, the tort of false light invasion of privacy "imposes liability on a person who publishes material that 'is not true, is highly offensive

9

to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988)); *see also Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. Ct. 1999). A plaintiff may also allege false light based on publication of *true* information, if the defendant selectively presented the information "in a fashion which renders the publication susceptible to inferences casting one in a false light." *Graboff*, 744 F.3d at 136-37 (quoting *Larsen*, 543 A.2d at 1189). It is such a theory—false light based upon implications from true information—that currently[9] provides the basis for Peruto's federal claim.

Mr. Peruto must show that Defendants recorded his statements after the interview with the intent to present those statements in a way that rendered them "susceptible to inferences casting [him] in a false light." *Id.*

The most obvious obstacle to Peruto's claim is demonstrating the falsity of the light in which the recording casts him. In response to this challenge, his factual allegations have evolved. Initially, Peruto alleged in his Response to Defendants' Motion to Dismiss that that Defendants "knew of Plaintiff's candor when speaking off-the-record based upon their prior April 2018 interview" and sought to record him when he "believed he was speaking freely." Pl.'s Resp. at 7-8, ECF No. 60. But as Defendants cogently pointed out in their Reply, this concedes that Defendants recorded Peruto with the intent to obtain his *candid* views and to cast him in a more truthful light. Defs.' Reply at 4, ECF No. 61. In his Sur-Reply, Peruto then contended that "the falsity which is of concern arises from the inference derived from the edited,

---

[9] Peruto did not allege that Defendants recorded him with the intent to commit the specific tort of false light until his response to Defendants' Motion to Dismiss. At oral argument, Plaintiff's counsel confirmed that false light is the only tort on which Peruto's Federal Wiretap Act claim rests.

10

modified, and deleted distribution of plaintiff's off the record conversation." Pl.'s Sur-Reply to Defs.' Reply at 3, ECF No. 62. That argument is no longer available, as all parties agree that no part of the recording has been edited, modified, or deleted—by Defendants or anyone else. The facts are therefore undisputed that the recording offers only an honest account of Peruto's conversation with Defendants. In that sense, it reflects him in the truest possible light.

The accuracy and authenticity of the recording present a daunting challenge for Plaintiff, and as a result, he seeks to reframe the case. The purported falsity on which Mr. Peruto's claim now turns—raised for the first time at oral argument—is that the recording inaccurately suggests that his *only* opinions about his client are the unfavorable personal views expressed after the interview, to the exclusion of affirmative statements he made in his capacity as a lawyer. This argument cannot support a claim of false light, because I reject the premise that any single recording of a person's statements necessarily implies that those statements reflect the person's *only* views on the topic. Particularly in the case of lawyers, it is widely understood that counsel's professional positions are often distinct from their personal views. A reasonable listener would not necessarily infer from the professional statement of a lawyer that he personally agrees with that position. And reasonable individuals also recognize that what one says in unguarded moments will frequently differ from what one might say when acting in a professional capacity. Moreover, in the context of the underlying controversy over the judge's sentence of Meek Mill, public disclosure of Mr. Peruto's remarks has focused on the fact that he is the judge's lawyer, implying some meaningful difference between his personal views and professional stance. Where, as here, the recording accurately recounts the speaker's stated views, it does not cast the speaker in a false light simply by virtue of the fact that it does not offer a comprehensive account of all his opinions on the subject.

11

Given Peruto's failure adequately to allege that Defendants recorded him with intent to commit a tortious act, he cannot invoke the exception to the Federal Wiretap Act's one-party consent rule. *See* 18 U.S.C. § 2511(2)(d). Even though Defendants alone consented to the recording, under a "one-party" statute like the Federal Wiretap Act, unilateral consent is sufficient in the absence of tortious intent. Accordingly, I will grant summary judgment for Defendants.

It should be noted that my ruling here can only address the claims that exist at this point. Plaintiff previously sought to enjoin release of the documentary, relief that I denied. It remains to be seen how the documentary itself presents Mr. Peruto and whether its portrayal of him gives rise to any other claims.

Plaintiff further opposes summary judgement on the ground that he has not been provided sufficient opportunity to conduct discovery. I denied his request for expedited discovery at an earlier stage in the case because of my intuition that the authenticity of the audio could be of controlling importance. *See* Order, Feb. 6, 2019, ECF No. 52. When these motions were converted to motions for summary judgement, Mr. Peruto was permitted to supplement the record. *See* Order, Mar. 14, 2019, ECF No. 63; Order, May 13, 2019, ECF No. 75. His counsel sought additional discovery, in the form of depositions of the camera and device operators present for the taping along with their contracts and related documents, in pursuit of a theory that Defendants deliberately recorded Plaintiff after the conclusion of the formal interview and did so with some form of tortious intent. But at oral argument, false light was the only tort counsel could identify, and the requested depositions and documents would not have cured the fatal flaws in that claim.

In exercising my discretion to deny broader discovery I was heavily influenced by the evolving nature of Plaintiff's factual allegations. The fundamental premise of the case—that Mr. Peruto had asked to go off the record—was revealed to be untrue, and the subsequent accusations about editing of the video unfounded. By the time of oral argument, it had become clear that the discovery sought represented an attempt to find a cause of action, rather than provide relevant evidence in support of the existing claims.

For the foregoing reasons, I will grant summary judgment for the Defendants as to both wiretap claims. An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Judge