# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A. CHARLES PERUTO, JR., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 18-4468 |
| | : | No. 18-4818 |
| ROC NATION, ET AL., | : | |
| Defendants. | : | |

**McHugh, J.**                                                                                                    **June 12, 2019**

## MEMORANDUM

In common parlance, when someone regrets words spoken in haste, the speaker of such words often follows up by saying: "I take that back." This is a case that tries to give legal force to that expression, as Plaintiff here seeks to replevy the contents of a recorded interview to keep embarrassing statements he made from being included in a film documentary. Courts have been virtually unanimous in limiting the remedy of replevin to physically tangible property. Putting to one side the profound First Amendment implications of Plaintiff's proposed relief—in the nature of a prior restraint—I conclude on technical legal grounds that replevin is not an available remedy for a dispute of this nature. I will therefore grant Defendants' Motion for Summary Judgement.

### I. Factual Background

This dispute arises out of an interview Plaintiff gave in May 2018 for a documentary series entitled #FreeMeek. Defendants Roc Nation, Amazon Alternative, IPC Television, Josh Miller, Patrick Reardon, Eli Holzman, and Janet Kim are all involved in the production of the documentary. The focus of the series is rapper Robert Rihmeek Williams, better known as Meek

1

Mill. It intends to address, at least in part, Meek Mill's experience with the criminal justice system, including his interactions with Judge Genece Brinkley of the Philadelphia County Court of Common Pleas. Judge Brinkley has overseen Mill's criminal case for more than a decade and became the subject of some controversy when she re-imprisoned him for probation violations. Facing public criticism, Judge Brinkley retained Plaintiff A. Charles Peruto, Jr. as her counsel.

On May 30, 2018, Mr. Peruto sat for an interview related to the #FreeMeek documentary series, which is the source of this dispute. The interview concluded with Peruto explaining why he believes Meek Mill does not represent an example of the problems in the criminal justice system. When Peruto finished, the interviewer and one of his colleagues indicated that they had no further questions.[1] *See* Decl. of Eli Holzman Ex. B, at 0:26:04-17, ECF No. 53-4. Peruto then said, "Let me tell you something," at which point the camera turned off. *Id.* at 0:26:20. The audio, however, continued recording as Peruto went on to say, "That was hard to do because defending this judge is now becoming—why doesn't she just grant this fucking thing?" *Id.* at 0:26:21-27. A conversation ensued—caught on the still-operating lavalier microphone—in which Peruto said critical things about his client and her handling of the Meek Mill case. The audio recording reflects that, despite his assertions to the contrary in both the Second Amended Replevin Complaint and the Second Amended Wiretap Complaint, Mr. Peruto never instructed anyone to go "off the record," nor did anyone present state that they had stopped the audio recording.

After Mr. Peruto was given the opportunity to hear the full recording as a part of this litigation, he alleged that it had been edited and did not accurately portray the interaction. Accordingly, I ordered the parties to agree upon an expert who could evaluate the authenticity of

---

[1] The details of this exchange are set out more extensively in my Memorandum addressing Plaintiff's related claims for wiretap violations.

the recording. A team of two experts, Catalin Grigoras and Jeff Smith, has since confirmed that the recording is authentic. *See* Expert Report, ECF No. 69. At oral argument, no party disputed its authenticity. Although the original recording equipment and storage media, which Defendants rented, no longer contain the recording, the recording is now stored on a variety of devices, including one in the possession of this Court.

Mr. Peruto obviously did not intend for his disparaging statements to be shared widely, let alone become part of the #FreeMeek documentary series. Unfortunately for Mr. Peruto, his comments were leaked to the press along with portions of the recording. Following the media attention on those comments, Peruto commenced a series of lawsuits in state court, including this replevin suit, which Defendants removed to this Court. Peruto also filed claims under both the Federal and Pennsylvania Wiretap Acts in a separate case, which was consolidated with this one.

Defendants moved to dismiss, and I have converted the motion to one for summary judgment. After considering all the evidence, I conclude that no disputed questions of material fact remain, and Defendants are entitled to summary judgment on the replevin claim.

## II. Legal Standard

A District Court may convert a motion to dismiss into a motion for summary judgment so long as the Court provides adequate notice of the conversion and reasonable opportunity to present material relevant to a summary judgment motion. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999). I provided notice of my intent to convert the motions in this case into motions for summary judgment, and Plaintiff has since supplemented the record with affidavits. After such a conversion, the motion is governed by the well-established standards of Fed. R. Civ. P. 56, as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

3

### III. Discussion

Plaintiff brings a novel replevin claim seeking sole possession of the digital version of his oral communications. The material facts are undisputed. The parties agree that Mr. Peruto spoke the words in question without asking to go off the record and that Defendants recorded and electronically stored those words. Peruto's replevin claim does not seek possession of the equipment originally used to record him[2] or the device on which the recording is stored, but rather possession of the data and files that contain the recordings of his voice.

The sole remaining question is one of law: whether Plaintiff has established a viable claim for replevin by showing that (1) the recording constituted a property interest subject to replevin, and (2) he had title and exclusive right to possess the property. *See Commw. v. Dean*, 369 A.2d 423, 425 (Pa. Super. Ct. 1976) (discussing limitations on the types of property interests subject to replevin); *Int'l Elecs. Co. v. N.S.T. Metal Prod. Co.*, 88 A.2d 40, 42-43 (Pa. 1952) (noting the requirement of title and exclusive right of possession). Plaintiff cannot satisfy either requirement of the controlling standard.

Peruto first must show that the computer data and digital files containing the audio recording constitute a property interest properly subject to replevin. Replevin is a common law remedy dating back centuries. *Fuentes v. Shevin*, 407 U.S. 67, 78 (1972). Historically it has taken the form of an action to regain possession of goods and chattels. *See id.*; *Dean*, 369 A.2d at 425. Traditionally, only *tangible* property has been recoverable in actions for replevin or the related tort of conversion.[3] *See Northcraft v. Edward C. Michener Assocs., Inc.*, 466 A.2d 620,

---

[2] Defendants leased the equipment used to record the interview, and the devices used to record and temporarily store the data have since been returned to their owner and overwritten with other data. This is immaterial, as Plaintiff does not assert an ownership interest in these devices and seeks return of the digital files that captured his voice.

[3] Neither party disputes that conversion cases properly provide guidance in the replevin context. Replevin and conversion have long been considered together. *McDonald v. Scaife*, 1 Jones (PA) 381, 386 (Pa. 1849) ("[T]rover and replevin are strictly analogous.").

624-25 (Pa. Super. Ct. 1983); *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 335 (D. Del. 2017). The law has expanded only slightly beyond the bounds of tangible property, but the Pennsylvania Superior Court has noted that "[t]he process of expansion has stopped with the kind of intangible rights which are customarily merged in, or identified with some document." *Northcraft*, 466 A.2d at 625 (quoting Prosser, Torts § 15 at 82-83 (4th ed. 1971)). In such cases, there is some intrinsic link between the physical item retrieved and the property interest it signifies. For example, items such as deeds or stock certificates are recoverable in replevin and conversion actions, *see id.*; *Eagle v. Morgan*, 2013 WL 943350, at *10 (E.D. Pa. Mar. 12, 2013), but other intangible property remains outside the bounds of a replevin claim.[4]

The computer data and digital files Peruto seeks represent intangible property beyond the reach of replevin. A stock certificate is a specialized instrument signifying a particular ownership interest. Hard drives, portable "thumb" drives, and data "cards," in contrast, store information of every conceivable form, encompassing audio, video, photos, spreadsheets, calculations, and every variety of text. The computer data and digital files that Peruto seeks to replevy represent one form of information, stored by various methods, none of them emblematic of the content of the data.

The computer data and digital files containing the recording of Peruto's oral communications are therefore unable to support a replevin action. Members of this court applying Pennsylvania law have considered a variety of digital property interests but have consistently found such interests unable to support a conversion claim. These decisions have

---

[4] In identifying this limitation, the Superior Court also noted that although "[t]here is perhaps no very valid and essential reason why there might not be conversion" of additional intangible property, such as ideas, "thus far other remedies apparently have been adequate." *Northcraft*, 466 A.2d at 625 (quoting Prosser, Torts § 15 at 82-83 (4th ed. 1971)). To that end, it should be noted that if unlawful recording in fact occurred, the federal and state wiretap statutes Peruto invokes could provide the remedy he seeks by preventing the use of the recording.

5

noted the limitation the Superior Court identified and concluded that, because such digital property interests are both intangible, and not a form of intangible property typically merged with particular documents, they are not subject to conversion or replevin. *See Eagle*, 2013 WL 943350, at *10 (Buckwalter, J.) (rejecting claim for conversion of LinkedIn account); *Apparel Bus. Sys., LLC v. Tom James Co.*, 2008 WL 858754, at *18-19 (E.D. Pa. Mar. 28, 2008) (McLaughlin, J.) (rejecting claim for conversion of software); *DirecTV, Inc. v. Frick*, 2004 WL 438663, at *2 (E.D. Pa. Mar. 2, 2004) (Padova, J.) (rejecting claim for conversion of satellite signals); *Famology.com Inc. v. Perot Sys. Corp.*, 158 F. Supp. 2d 589, 591 (E.D. Pa. 2001) (Hutton, J.) (rejecting claim for conversion of internet domain names). I reach the same conclusion with respect to the data and files in this case.

Mr. Peruto contends that, because his words are embedded in stored computer data, such data qualifies as tangible property subject to replevin. Plaintiff's sole support is an unpublished trial court opinion in a New York state criminal case where the court concluded that a recording of a 911 call constituted "property" for purposes of the state's definition of Petit Larceny. *See People v. Fountain*, No. 16-1139, 2017 N.Y. Slip Op. 30674(U) (N.Y. Cty. Ct. 2017). I do not dispute that sound recordings or digital files may constitute property in certain legal contexts. But Peruto's task is not simply to show a property interest that supports *some* legal claim; he must demonstrate that the nature of the property renders it suitable for the specific remedy of replevin.

To the extent Peruto also asserts a property interest in his words themselves—separate from the data or files containing them—no court has held that the contents of a recording are subject to replevin. This is not surprising given the ephemeral nature of the spoken word. In

6

*Hydrogen Masters Rights, Ltd.*,[5] the court noted that although the physical objects containing recorded confidential information could potentially be subject to replevin, no such claim could exist for the contents of the recordings. 228 F. Supp. 3d at 335.[6] Similarly, Pennsylvania law would permit a replevin claim for a physical object containing confidential information, *see Stenograph, L.L.C. v. Sims*, 2000 WL 964748, at *3-4 (E.D. Pa. July 12, 2000), but that is distinct from the intangible information a device contains. This case would be markedly different if Plaintiff himself had created a recording of the interview and Defendants wrongfully took possession of the physical device containing it. But those are not the facts, and Peruto cannot show that his words—either independently or as bytes of data captured in an electronic format—constitute property recoverable in replevin.

Even if Mr. Peruto could assert a property interest properly subject to replevin, however, he cannot claim title and an exclusive right to possess the property in question. The plaintiff bears the burden of establishing title and exclusive right of possession. *See Blossom Prod. Corp. v. Nat'l Underwear Co.*, 191 A. 40, 41–42 (Pa. 1937). Here, Peruto has simply asserted that he "has title and exclusive right to possess the computer data and digital file containing the illegally obtained audio recording," without citing the basis for such entitlement.[7] Pl.'s Resp. to Defs.' Mot. Dismiss Second Am. Replevin Compl. 9, ECF No. 30. He claims that his "oral

---

[5] Although the court in *Hydrogen Masters* did not apply Pennsylvania law, the legal principles regarding replevin and conversion are sufficiently similar for the reasoning to have persuasive value.

[6] At oral argument, Plaintiff's counsel attempted to distinguish *Hydrogen Masters* because defendants there owned the devices used to create and store the recordings. But the plaintiffs in *Hydrogen Masters* did not ground their argument in ownership of the equipment. They directly asserted ownership of the *contents* of the recordings. The court based its holding on its conclusion that intangible property is not subject to replevin.

[7] Plaintiff also emphasizes the fact that the data is readily identifiable. *Id.* But this factor is not relevant to whether a plaintiff holds title and an exclusive right of possession; it is only employed to determine whether the property is appropriate for replevin. *See Dean*, 369 A.2d at 425. For reasons already discussed, the property Peruto seeks is not appropriate for replevin due to its intangibility.

communications" constituted his property, which Defendants "illegally obtained and made permanent as 'digitized communications.'" Pl.'s Resp. to Defs.' Mot. Dismiss Second Am. Replevin Compl. 9. He appears to argue that the act of (purportedly) unlawful recording is what gives rise to the ownership interest he asserts. But Plaintiff offers no legal authority supporting the conclusion that Defendants' conduct in some way endows him with exclusive rights to the words spoken.

Understandably so. Claiming *exclusive possession* of words knowingly *communicated to others* presents an inherent contradiction. Once words have been expressed to another, the speaker would seem to have forfeited the exclusive right to "possess" them, as they then exist in both parties' memories. If someone present creates a record of what was said, the physical means they employ to do so—whether written notes or electronic device—would have a tangible existence that could be appropriate for replevin. But the means of preservation are distinct from the words themselves.

Mr. Peruto further argues that, even if he cannot claim an exclusive right to words spoken in the presence of others, his voice is uniquely his, and Defendants cannot appropriate the sound of his voice in their documentary. On a different record, this argument might raise profound questions of privacy and personal identity. Here, the fatal flaw is that, in agreeing to cooperate with Defendants, Peruto expressly agreed in writing to allow them to record and use his voice. *See* Decl. of Eli Holzman Ex. A, ECF No. 53-3. Although Plaintiff might argue that the release has limited applicability, his having signed it certainly forfeits any claim of exclusivity as to the sound of his voice.

However understandable Mr. Peruto's desire to retract his comments may be, Pennsylvania law does not recognize either the digital files containing the recording or the words

8

themselves as property interests subject to replevin.  Further, even if the digital files or the words were recoverable in replevin, Peruto cannot establish that he has title to or an exclusive right to possess them.  Accordingly, Defendants' Motion for Summary Judgment on the replevin claim will be granted.

Replevin is not a vehicle through which Mr. Peruto can "take back" what he said.

/s/ Gerald Austin McHugh  
United States District Judge